UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/19/05

BRENDA M. CARRINGTON,

                              Plaintiff,

        - against -                              04 Civ. 5187 (JGK)

                                                 MEMORANDUM
JO ANNE BARNHART,                                OPINION AND ORDER
Commissioner of Social Security,

                              Defendant.

**JOHN G. KOELTL, District Judge:**

The plaintiff, Brenda Carrington, brings this action
pursuant to 42 U.S.C. 405(g) seeking reversal of a final
determination of the Commissioner of Social Security
("Commissioner") that the plaintiff was not entitled to
disability insurance benefits.  The plaintiff has filed a motion
for judgment on the pleadings pursuant to Federal Rule of Civil
Procedure 12(c).  In response, the Commissioner has filed a
cross-motion for judgment on the pleadings pursuant to Rule
12(c).

The plaintiff filed for disability insurance benefits on
April 16, 2001.  (R. at 14.)  The claim was denied.  (R. at 14,
52.)  On February 28, 2002, the plaintiff filed a timely hearing
request and received a hearing before Administrative Law Judge
("ALJ") Samuel A. Durso on April 11, 2003.  (R. at 23-47.)  The
ALJ considered the case de novo and issued a decision on May 29,

1

2003, denying the plantiff's claim. (R. at 11-21.) The decision became the Commissioner's final decision on May 28, 2004, when the Appeals Council denied the plaintiff's request for review of the ALJ's decision. (R. at 4-7.) This appeal followed.

## I.

The administrative record contains the following facts. The plaintiff was born on July 19, 1953. (R. at 15, 61.) She completed the 12th grade and, subsequently, completed two years of college. (R. at 15, 45.) She received special training as a nurse's aide (R. at 81) and possesses nursing and dental assistant certificates. (R. at 45.) The plaintiff reported that she worked as a dental assistant from June 1987 to December 1988 and worked as a certified nursing assistant from October 1989 until July 1996. (R. at 88.) According to the plaintiff, the dental assistant job entailed walking for three hours a day, standing for three hours a day, sitting for two hours a day, and frequent lifting of objects that did not exceed ten pounds. (R. at 89.) The plaintiff described her nursing assistant job as a far more rigorous occupation, which involved heavier lifting (frequent lifting of 50 pounds, occasional lifting of 100 pounds or more) and extended periods of stooping, crouching, and kneeling. (R. at 90.)

The plaintiff stated that she became disabled on July 10, 1996, when she injured her back while transferring an uncooperative patient from a bed to a wheelchair. (R. at 28-29, 61.) The injury occurred when the plaintiff fell backwards and hit the base of her back against the arm of a large chair. (R. at 29.) The plaintiff claims that after the accident she experienced severe pain on her left side which traveled to her lower back and leg. (R. at 32.) She described the pain as "excruciating." (Id.) The plaintiff received workers compensation for a time and eventually received a $35,000 lump sum award in August 2002. (R. at 29-30.)

The plaintiff stated that the injuries sustained to her back severely limited her movement. She testified that after the injury she could stand for only five to ten minutes at a time, could sit without fidgeting for only ten minutes, and could sit for thirty consecutive minutes only if allowed to continually readjust her positioning. (R. at 31.) The plaintiff claimed that she could not bend down or do any considerable lifting. (R. at 41). As a result of her physical difficulties, the plaintiff testified that her daughter handled the household chores, including cooking, cleaning, laundry, and shopping. (R. at 40.) This testimony conflicts in part with earlier statements from May 25 and October 10, 2001 in which the

plaintiff stated that she did perform these household chores, albeit with the assistance of her daughters. (R. at 106, 109.)

The plaintiff also claimed to suffer from a variety of ailments not related to her back injury. She testified that she has uncontrolled diabetes despite taking both insulin and prescribed pills (which has caused her to lose teeth). (R. at 35.) Her diabetes frequently caused her to experience fatigue, nausea, dry mouth, numbness of the extremities, and swelling of the feet. (R. at 34.) The plaintiff claimed that she suffered from blurry vision, dizziness, high blood pressure and severe headaches. (R. at 37-39.) In addition, the plaintiff testified that she suffered from intestinal disorders since December 31, 2001 (R. at 36-37.), and in at the end of 2002 was diagnosed with Crohn's disease. (R. at 36.)

## II.

The plaintiff's relevant medical history involves a variety of medical opinions given both during and after her period of eligibility. These opinions, including those of the State's reviewing doctors, will be noted in chronological order.

The plaintiff was examined by Dr. Gabriel Feinstein at the Bronx Cross County Medical Group beginning in 1986 (R. at 168-252), and then by Dr. Feinstein at the New York Medical Group HIP Center from June 1996 through December 2001. (See R. at 17, 114-32.) Dr. Feinstein provided the plaintiff with general

4

medical care and treated her for diabetes and hypertension. (R. at 17.) On January 28, 1997, Dr. Feinstein reported that the plaintiff's diabetes was poorly controlled. (See R. at 243.) The plaintiff was prescribed insulin, Glyburide, and Glucophage with limited success. (See R. at 243.) The plaintiff was registered in a diabetes self-management program on July 13, 1999, but failed to appear. (R. at 250.) The plaintiff never complained to Dr. Feinstein about her back injury.

The plaintiff was examined by Dr. James T. Gilas, a specialist in physical medicine and rehabilitation, on February 16, 2000, for complaints of lower back pain. (R. at 133.) The plaintiff reported chronic lower back pain without radiation to the lower extremities. (R. at 16, 133.) The examination of the patient revealed decreased gross and segmental mobility at the cervical, thoracic and lumbar spine in a non-capsular pattern, with associated muscle spasm and hypertonicity at the involved spinal segments, and tenderness at the paraspinal musculature. (Id.) An X-Ray of the plaintiff's lumbar spine revealed that the bony structures were normal in texture and density, with normal vertebral alignment. (R. at 135.) There was no fracture, spondylolisthesis, or bony destruction and the pedicles appeared intact. (Id.) Dr. Gilas diagnosed chronic lumbar sprain/strain syndrome with myofascial pain syndrome, and prescribed physical therapy sessions, home exercises, massage,

ultrasound, heat and cold applications, and transcutaneous electrical muscle stimulation. (R. at 16, 134.)

The plaintiff was examined by Dr. Barry M. Kauffman, a Neurologist associated with Paragon Medical, P. C., on March 2, 2000. (R. at 16, 136.) She complained of left paralumbar pain with occasional radiation to the left buttock and intermittent weakness in the left lower extremity. (R. at 16-17, 136). Dr. Kauffman reported that the plaintiff's gait, power, and coordination were normal, and that rapid alternating movements were performed well with her hands and feet. (R. at 136.) He diagnosed possible lumbosacral radiculopathy, lumbosacral strain/sprain, and polyneuropathy presumed secondary to diabetes. (R. at 17, 137.)

The plaintiff was examined by Dr. Walter Ploski, an orthopedist, on March 3, 2000. (R. at 17, 138.) The plaintiff reported her history of diabetes and complained of pain in her lower back on the left side, with pain radiating to the left buttock. (R. at 138.) She complained of tenderness and tingling sensations in the dorsum of the foot. (Id.) The plaintiff also reported pain at the left posterior iliac crest and left sciatic notch region. (R. at 17, 138.) The doctor noted that the plaintiff ambulated without a limp and stood erect with no list or tilt of the trunk, but experienced pain on trunk motion. (R. at 138.) Dr. Ploski diagnosed lower back

derangement with radicular features, left lower extremity. (R. at 17, 139.)

The plaintiff was examined by Dr. Michael Russ, a physician specializing in physical medicine and rehabilitation, on March 22, 2000. (R. at 17, 140.) Dr. Russ observed decreased mobility in the lumbar spine, muscle spasms, hypertonicity at the associated paraspinal musculature, and trigger points at the lumbar musculature. (Id.) Dr. Russ recommended physical therapy, home exercises, heat and cold applications, and the use of a Transcutaneous Electro-Nerve Stimulator ("TENS") unit. (Id.) Physical therapy was scheduled for three times a week to improve joint mobility, decrease muscle spasms and hypertonicity, and decrease soft tissue inflammation. (R. at 140). On March 28, 2000, the plaintiff underwent an MRI of the lumbar spine which revealed posterior bulges at L4-L5 and L5-S1, but no evidence of spinal stenosis or disc bulging. (R. at 17, 142.) On April 26, 2000, Dr. Russ noted that the plaintiff had posterior disc bulges and decreased mobility at the lumbar spine. (R. at 145.) The rate of physical therapy was reduced from three to two times per week. (Id.) On June 21, 2000, Dr. Russ noted a "modest improvement" in the plaintiff's symptoms. (R. at 17, 147.) On August 30, 2000, Dr. Russ observed that the plaintiff's range of motion had improved, but also noted that the plaintiff had reached the maximum medical improvement from

physical medicine interventions, and that her disability would be "mild permanent partial." (R. at 148.)

While under the care of Dr. Russ, the plaintiff was examined by Dr. Suellen Levy, a neurologist at Continental Medical, P.C., on April 4, 2000. (R. at 143-44.) The plaintiff complained of lumbar spine pain and numbness of the bilateral hands and feet. (Id.) The examination revealed no evidence of sensory loss, and that deep tendon reflexes were equal in all extremities. (Id.) Dr. Levy concluded that the etiology of the patient's "severe debilitating symptomatology" was not clear at the time. (Id.)

The plaintiff was examined by Dr. Bortuzzo on December 4, 2001, at the request of the Disability Determination Service. (R. at 17, 149.) The plaintiff reported her history of diabetes, episodes of polyuria, and frequent dizziness. (Id.) She complained of both throbbing and sharp lower back pain in the lumbar area which radiated to the posterior aspects of her legs and produced numbness in the feet. (Id.) The plaintiff claimed that despite nearly constant physical therapy since her injury in 1996 she experienced only minimal relief. (Id.)

In the interview with Dr. Bortuzzo, the plaintiff noted that she had lost over 100 pounds to reach her then current weight of 246 pounds. (Id.) She reported that she never used a cane, a brace, or back support, did not use a TENS unit, and was

8

advised not to have surgery. (R. at 149.) The plaintiff noted that she usually spent her time at home cooking and doing light cleaning and did shopping and heavy cleaning with the assistance of her daughter and husband. (Id.)

In the examination of the patient, Dr. Bortuzzo noted that the plaintiff moved slowly, but did so without a limp or the use of a cane. (R. at 17, 150.) She could not perform toe, heel, or tandem ambulation because of pain in the lumbar area and could not perform a squat. (R. at 17-18, 150.) Dr. Bortuzzo found no obvious spinal deformities, paraspinal spasm or tenderness. (R. at 18, 150.) Her joints allowed a free range of motion, and were without deformities, swelling, or tenderness. (R. at 18, 151.) Dr. Bortuzzo diagnosed: (1) history of diabetes mellitus type II on oral medication with no evidence of an organ complication; (2) history of chronic lower back pain with radicular pattern and evidence of bilateral neuropathy; (3) morbid obesity; and (4) severe elevation of systolic and diastolic blood pressure, currently asymptomatic. (Id.) In light of this diagnosis, Dr. Bortuzzo found that the plaintiff could perform only "sendentary to light work activity." (Id.)

The plaintiff was examined in the Montefiore Medical Center Emergency Room on December 31, 2001 with complaints of vomiting and acute right upper quadrant pain. (See R. at 18, 262.) She

9

was diagnosed with chronic cholecystitis by a HIDA scan, but no stones were observed. (See R. at 18, 265.) The repeat HIDA scan showed "practically no gallbladder function at all," and gallbladder removal surgery was recommended. (See Id.) The surgery was performed on January 28, 2002 with good results. (See R. at 18, 275.) In the months following the surgery, the plaintiff attempted to eat a low fat diet and subsequently lost ten pounds. (Id.)

The plaintiff's medical records were examined by T. Raymond, a State medical consultant, on January 18, 2002. (See R. at 153-60.) The examiner addressed the plaintiff's diabetes and recorded that the plaintiff could not tolerate insulin, but noted that there were no readable lab values available to review her success with oral hypoglycemics. (R. at 154.) In regard to the plaintiff's back injuries, the examiner reviewed the December 4, 2001, records of Dr. Bortuzzi and noted that, other than the plaintiff's decreased forward flexion, the plaintiff's physicial condition was "unremarkable." (Id.) The examiner stated that the plaintiff could sit for six hours, or stand and walk for six hours, in a standard eight hour work day. (See R. at 18, 154.)

The plaintiff was examined by Dr. Joseph DeFeo on November 11, 2002. (R. at 18, 313.) The plaintiff complained of lower back pain radiating to the left leg and right limb, morning

stiffness of the lumbar spine, hypesthesias of the feet, and intermittent knee and shoulder pain. (R. at 314.) Dr. DeFeo reviewed the medical reports of Dr. Kauffman, Dr. Russ, and Dr. Ploski, as well as the MRI of March 28, 2000. (R. at 316.) On the basis of his analysis of the patient and a review of the past medical records, Dr. DeFeo concluded that the plaintiff had lumbosacral spondylosis with radiculitis (especially to the left lower extremity), multiple disc bulges, and multilevel arthroses, including the left shoulder and left knee, with the secondary effects of motor weakness and limitation of motion. (R. at 316.) Dr. DeFeo graded the plaintiff's disability as "total," and opined that the plaintiff's limitations would preclude the ability to engage in any gainful employment. (R. at 317.)

On April 3, 2003, Dr. Ivan Kahn, M.D. noted that the plaintiff had been diagnosed with Crohn's disease. (See R. at 18, 326.) Dr. Kahn reported that the plaintiff was put on oral treatment with partial response, but that the plaintiff remained anemic. (See id.)

### III.

A court may set aside a determination by the Commissioner only if it is based on legal error or is not supported by substantial evidence in the record. See 42 U.S.C. § 405(g); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

Substantial evidence is "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197 (1938)); see also Diaz v. Shalala, 59 F.3d 307, 312 (2d Cir. 1995); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).

The analytical framework for evaluating claims of disability is defined by regulations of the Commissioner, which set forth a five-step inquiry. See 20 C.F.R. § 404.1520. The Court of Appeals for the Second Circuit has described this five-step process as follows:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical capacity to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

12

> 5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work, which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.

Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000) (internal citation omitted); see also Melville v. Apfel. 198 F.3d 45. 51 (2d Cir. 1999); Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998); Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir. 1995); Villanueva v. Barnhart, No. 03 Civ. 9021, 2005 WL 22846, at *6-7 (S.D.N.Y. Jan. 3, 2005).

The claimant bears the initial burden of proving that she is disabled within the meaning of the Act. See 42 U.S.C. § 423(d)(5); see also Shaw, 221 F.3d at 132; Rodriguez v. Apfel, No. 96 Civ. 8330, 1998 WL 150981, at *7 (S.D.N.Y. Mar. 31, 1998). This burden encompasses the first four steps described above. See Rivera v. Schweiker, 717 F.2d 719, 722 (2d Cir. 1983). If the claimant satisfies the burden of proof through the fourth step, she has established a prima facie case and the burden shifts to the Commissioner to prove the fifth step. See id. at 722-23; see also Infante v. Apfel, No. 97 Civ. 7689, 2001 WL 536930, at *4 (S.D.N.Y. May 21, 2001) (citing Berry, 675 F.2d at 467).

When employing this five-step process, the ALJ "must consider" four factors in determining a claimant's entitlement to benefits: "(1) the objective medical facts; (2) diagnoses or

13

medical opinions based on such facts; (3) subjective evidence of
pain or disability testified to by the claimant or others; and
(4) the claimant's educational background, age, and work
experience." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir.
1999)(citation omitted); see also Blaylock-Taylor v. Barnhart,
No. 03 Civ 3437, 2005 WL 1337928, at *6-8 (S.D.N.Y. Jun, 6
2005).

In the assessment of medical evidence, a treating
physician's opinion is given controlling weight when that
opinion is "well-supported by medically acceptable clinical and
laboratory diagnostic techniques and is not inconsistent with
the other substantial evidence in [the] case record." 20 C.F.R.
§ 416.927(d)(2); Schisler v. Sullivan, 3 F.3d 563, 567 (2d Cir.
1993). The Commissioner's regulations require that greater
weight be given to the opinion of a treating than a non-treating
physician, especially where the examination by a non-treating
physician is for the purposes of the disability proceeding
itself. See Schisler, 3 F.3d at 567- 68. These regulations
state, in pertinent part:

> Treatment relationship. Generally, we give more
> weight to opinions from your treating sources,
> since these sources are likely to be the medical
> professionals most able to provide a detailed,
> longitudinal picture of your medical impairment(s)
> and may bring a unique perspective to the medical
> evidence that cannot be obtained from the objective
> medical findings alone or from reports of
> individual examinations, such as consultative
> examinations or brief hospitalizations. If we find

14

that a treating source's opinion on the issue(s) of
the nature and severity of your impairment(s) is
well-supported by medically acceptable clinical and
laboratory diagnostic techniques and is not
inconsistent with the other substantial evidence in
your case record, we will give it controlling
weight. When we do not give the treating source's
opinion controlling weight, we apply [various]
factors ... in determining the weight to give the
opinion. We will always give good reasons in our
notice of determination or decision for the weight
we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2).

The factors used to determine the weight of a treating source's

opinion when it is not given controlling weight include:

(i) the frequency of examination and the length,
nature, and extent of the treatment relationship;
(ii) the evidence in support of the opinion, i.e.
"[t]he more a medical source presents relevant
evidence to support an opinion, particularly
medical signs and laboratory findings, the more
weight" that opinion is given; (iii) the opinion's
consistency with the record as a whole; (iv)
whether the opinion is from a specialist; if it is,
it will be accorded greater weight; and (v) other
relevant but unspecified factors.

Schisler, 3 F.3d at 567 (surveying 20 C.F.R. §§ 404.1527(d)(2)-

(6), 416.927(d)(2)-(6)); Reyes v. Barnhart, No. 01 Civ. 1724,

2002 WL 31385825, at *6 (S.D.N.Y. Oct. 21, 2002).

Even if the conclusions of the treating physician are not

given controlling weight, the ALJ is required to articulate the

weight given to the treating physician's conclusions and to give

"good reasons" for that weight. Schisler, 3 F.3d at 567; see

also Villanueva v. Barnhart, No. 03 Civ. 9021, 2005 WL 22846, at

*11-12 (S.D.N.Y. Jan 03, 2005).

15

In this case, judgment on the pleadings should be granted in favor of the Commissioner. The ALJ carefully evaluated the plaintiff's claims of physical impairments and there is substantial evidence to support his determination that the plaintiff was not disabled under the Act.

The ALJ undertook the appropriate sequential inquiry in the plaintiff's case. At step one, the ALJ correctly found that the plaintiff had not engaged in substantial gainful activity since July 10, 1996, the date of her alleged onset of disability, through December 31, 2001, when she was last insured. (R. at 20.)

At step two, the ALJ determined that the plaintiff had impairments which qualify as "severe" based on the requirements in the regulations. (Id.) The evidence established that the plaintiff had type II, non-insulin dependant diabetes mellitus; degenerative changes of the lumbar spine at L4-L5 and L5-S1; morbid obesity; and poorly controlled hypertension. (Id.) The ALJ determined that there was insufficient evidence to establish that the plaintiff's headaches and dizziness were severe. (Id.) The ALJ also determined that the plaintiff's cholecystitis was resolved with gallbladder surgery in January 2002, and that there was insufficient evidence to establish that any other

16

abdominal disorder, Crohn's Disease in particular, was present prior to the date she was last insured. (See id.)

The plaintiff disputes the ALJ's final finding in regard to the abdominal disorder. The plaintiff argues that the medical records reveal that the plaintiff's Crohn's disease predated her date of last insured, despite the fact that her condition was not accurately diagnosed until long after her period of disability eligibility had expired. This argument proceeds by the inference that the abdominal pains for which the plaintiff received treatment on December 31, 2001--the plaintiff's final day of disability eligibility--were the result of an undiagnosed case of Crohn's disease. This argument, however, is not supported by the record. There is insufficient evidence to support the allegation that the plaintiff's Crohn's disease-- which was diagnosed fifteen months after her disability eligibility expired--existed prior to her date of last insured.

The plaintiff's abdominal disorder was first recognized on December 31, 2001 during a visit to the Montefiore Emergency Room. (See R. at 18, 262.) A HIDA scan revealed "practically no gallbladder function at all"; she was diagnosed with chronic cholecystitis and underwent gallbladder surgery on January 28, 2002. (See R. at 18, 265, 275.) On March 7, 2000, Dr. Hodgson at Montefiore reported that the plaintiff "had no further symptoms" after the surgery. (R. at 275.) The plaintiff's

Crohn's disease was subsequently diagnosed by Dr. Kahn--fifteen months after the date she was last insured. (See R. at 18, 326.) In the interim between her surgery for abdominal pain and her diagnosis of Crohn's disease from Dr. Kahn, the plaintiff was examined by Dr. Defeo on November 11, 2002, to review her disabilities, but the plaintiff did not complain of any continuing abdominal discomfort. (See R. at 313-25.) In addition, Dr. Kahn never gave an explicit opinion as to when the plaintiff's condition began, or stated that the plaintiff suffered from the condition during her period of disability eligibility. (See R. at 326.) Accordingly, the diagnosis by Dr. Kahn fifteen months after the plaintiff's date of last insured cannot form the proper basis for a retrospective opinion.

The ALJ fulfilled his duty to develop a complete medical history of the disability applicant. See 20 CFR § 404.1512(d). In light of the overall record, the ALJ made a reasonable determination based on substantial evidence that the source of the plaintiff's abdominal discomfort prior to her date of last insured was chronic cholecystitis, which was remedied by her gallbladder removal surgery, and not a case of undiagnosed Crohn's disease. (See R. at 18.)

At step three, the ALJ determined that the plaintiff's impairments, although severe, did not meet or equal the medical

criteria of any condition described in the Listing of Impairments contained in 20 C.F.R. Part 404, Appendix 1 to Subpart P. (R. at 20.)

At step four, the ALJ compared the plaintiff's residual functional capacity to her past relevant work as a nursing assistant and dental assistant. (See R. at 20-21.) The ALJ determined that the plaintiff could perform "sedentary to light work." (R. at 18.) Regulations and rulings promulgated by the Social Security Administration correlate the findings of "sedentary work" and "light work" to specific levels of functional capacity. 20 C.F.R. 404.1567; SSR 83-10 (PPS-101), 1983 WL 31251, at *5-6 (S.S.A. 1983). In light of these regulations and rulings, the ALJ determined that the plaintiff retained the physical functional capacity to lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk six hours in an eight-hour workday; and sit six hours in an eight-hour workday. (R. at 18.) The ALJ noted that the Dictionary of Occupational Titles describes the plaintiff's past relevant work as a dental assistant as "skilled, light work."[1] (R. at 20.) In light of the plaintiff's ability to do "light work," and the fact that her previous work as a dental assistant was classified as "light work," the ALJ reached the

---

[1] The ALJ did not rely on his conclusion that the plaintiff's past relevant work as a certified nursing assistant was "semi-skilled, heavy work" because he only found that the plaintiff could do light work. (R. at 20.)

19

conclusion that the plaintiff had not been precluded from the performance of her past work as a dental assistant for any continuous period of twelve months prior to her date of last insured. (Id.)

The ALJ reached his conclusion after properly considering the opinions of the physicians that treated the plaintiff. The plaintiff saw a variety of doctors, in most cases for no more than one visit. Neither of the two treating physicians that saw the plaintiff on multiple occasions--Dr. Feinstein and Dr. Russ- -gave diagnoses that support a finding of disability. The plaintiff saw Dr. Feinstein at the New York Medical Group over the period stretching from June 1996 to December 2001; she received general medical care and treatment for diabetes and hypertension. (See R. at 17, 114-32.) Although the plaintiff experienced occasional difficulties in properly controlling her diabetes, the record did not warrant a finding by the ALJ that her illness reached the level of disability. In addition, the plaintiff never discussed her back injuries with Dr. Feinstein. The plaintiff was treated for her back injuries by Dr. Russ on a number of occasions between March 22, 2000 and August 30, 2000, beginning almost four years after the accident occurred. (See R. at 17, 140-148.) Dr. Russ diagnosed the plaintiff's back injuries and prescribed physical therapy, with some success. (R. at 17, 147.) Although Dr. Russ determined that the

20

plaintiff had a permanent disability, he concluded that the disability was "mild permanent partial." (R. at 19, 148.) The opinions of the other physicians that treated the plaintiff prior to her date she was last insured--Drs. Gilas, Kauffman, Ploski, and Levy--also support the conclusion reached by the ALJ: namely that the plaintiff suffered from severe impairments that would not prevent her from performing her previous relevant work as a dental assistant.

The review of the state examining physician offers further support for the ALJ's determination.[2] Dr. Bortuzzo examined the plaintiff on December 4, 2001 at the request of the disability determination service. (R. at 17, 149.) Dr. Bortuzzo performed a careful analysis of the plaintiff and determined that the plaintiff suffered from a variety of impairments, including diabetes, chronic lower back pain, morbid obesity, and high blood pressure. (R. at 18, 151.) However, Dr. Bortuzzo noted that the plaintiff did not require use of cane, brace, or back support, and did not limp. (R. at 17, 149.) Furthermore, Dr. Bortuzzo noted that the plaintiff was able to perform a variety of household chores. (R. at 149.) This analysis of the plantiff's limitations correlates with the plaintiff's own description of her daily activities. (R. at 19, 106, 109.) In

_____

[2] A report of a consultative physician may constitute substantial evidence in support of an ALJ's opinion. Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983).

21

light of this record, Dr. Bortuzzo concluded that the plaintiff could perform "sedentary to light activity." (R. at 18, 151.) This analysis was substantially supported by the facts in the record and was consistent with the diagnoses of the various physicians that previously treated the plaintiff.

The plaintiff objects to the ALJ's determination of residual functional capacity for three primary reasons. The plaintiff argues that the ALJ placed too much emphasis on the opinion of the state medical consultant, unacceptably discredited the opinions of Dr. Defeo, and improperly assessed the plaintiff's allegations of pain. Each of these arguments will be considered in turn.

The plaintiff alleges that the ALJ placed too much emphasis in the opinion of T. Raymond, a state medical consultant, in determining the plaintiff's residual functional capacity. This allegation is not supported in the record. T. Raymond analyzed the records of the plaintiff--in particular the residual functional capacity findings of Dr. Bortuzzo--and correlated those findings to the regulations and rulings promulgated by the Social Security Administration. (R. at 154.); see 20 C.F.R. 404.1567; SSR 83-10, 1983 WL 31251, at *5-6. T. Raymond's recommendations fit squarely within those rulings and regulations. To the extent that the plaintiff objects to the ALJ's reliance on the opinions of T. Raymond, the plaintiff is

actually disputing the findings of Dr. Bortuzzo, but those findings could reasonably have been relied upon by the ALJ, were consistent with the records as a whole, and provided substantial evidence. Accordingly, the ALJ was justified in his decision in determining the plaintiff's residual functional capacity.[3]

The decision of the ALJ differs in substantial degree with only one of the medical opinions in the record--that of Dr. Defeo. Dr. Defeo examined the plaintiff on a single occasion on November 11, 2002--more than 10 months after the date the plaintiff was last insured. (See R. at 313-317.) Dr. Defeo determined that the plantiff's disability was "total" and would effectively preclude the plaintiff from engaging in any gainful employment. (R. at 317.)

The ALJ rejected the opinion of Dr. Defeo for two principal reasons. First, the ALJ noted that the Dr. Defeo failed to address the medical finding of Dr. Russ, a contemporaneous treating physician, that the plaintiff had a "mild permanent partial" disability, not a "total" disability. (R. at 18-19, 148, 317.) While Dr. DeFeo indicated that he reviewed records from Dr. Russ from March 22, 2000 through June 21, 2000, he gives no explanation for not reviewing or crediting Dr. Russ's

---

[3] The plaintiff is incorrect in asserting that T. Raymond only considered the plaintiff's diabetes. While that is listed as the primary diagnosis, (R. at 153), T. Raymond plainly reviewed Dr. Bortuzzo's records in reaching the conclusions as to the plaintiff's exertional limitations. (R. at 154.)

August 30, 2000 conclusion that the plaintiff's disability was only "mild permanent partial." (R. at 148, 316.) Second, the ALJ noted that the findings of Dr. Defeo were relative to the plaintiff's condition at the time of the assessment and thus had little probative value in determining the plaintiff's level of disability prior to the date she was last insured. (R. at 19.) For the reasons stated above, the ALJ provided a reasonable basis for discounting the opinions of Dr. Defeo. Moreover, Dr. DeFeo had seen the plaintiff only once on a consulting basis and had no established doctor-patient relationship.

The plaintiff also disputes the finding of the ALJ which discounted the plaintiff's allegations of pain that restricted her activities. Among other factors, in assessing the plaintiff's allegations of subjective pain, the Commissioner must consider the following factors: (i) the plaintiff's daily activities; (ii) the location, duration, frequency, and intensity of the plaintiff's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the plaintiff takes or has taken to alleviate pain or other symptoms; (v) treatment, other than medication, the plaintiff receives or has received for relief of pain or other symptoms; (vi) any measures the plaintiff uses or has used to relieve pain or other symptoms (e.g., lying flat on his/her back, standing for 15 to 20 minutes

24

every hour, sleeping on a board, etc.); and (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. See 20 C.F.R. § 404.1529(C)(3); SSR 96-7, 1996 WL 374186, at *3 (S.S.A. 1996).

The plaintiff's subjective experience of pain "may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence," so long as a medical impairment has been clinically ascertained. Aronis v. Barnhart, No. 02 Civ. 7660, 2003 WL 22953167, at *7 n.7 (S.D.N.Y. Dec 15, 2003); see Gallagher v. Schweiker, 697 F.2d 82, 84 (2d Cir. 1983). However, the ALJ retains "the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979); see Perez v. Barnhart, 23 F. Supp. 2d 336, 340-41 (S.D.N.Y. 2002). Furthermore, "it is the function of the [Commissioner], not [the courts], to resolve evidentiary conflicts and to appraise the credibility of the witnesses, including the claimant." Worthy v. Barnhart, No. 01 Civ. 7907, 2002 WL 31873463, at *3 (S.D.N.Y. Dec 23, 2002) (quoting Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983) (citations omitted)).

The ALJ considered the plaintiff's testimony about her limitations and subjective symptoms, but determined for numerous detailed reasons that her testimony was not fully credible. (R. at 19-20.) These findings are grounded in substantial evidence in the record as a whole. The ALJ noted that the plaintiff's daily activities--conducting household chores, driving, shopping and cooking with assistance, and performing physical therapy exercises--were inconsistent with the plaintiff's claims of significant limitations. (R. at 19.) The ALJ observed that the plaintiff's muscles had not atrophied--the plaintiff was able to ambulate without a limp and stand erect without any list or tilt of the trunk. (Id.) Furthermore, the ALJ determined that the plaintiff's use of pain medication indicated an absence of impairments that would produce debilitating symptoms: the plaintiff did not require prescription strength pain medication, did not ask for stronger medications, and was never disturbed while sleeping due to pain. (Id.) Moreover, the ALJ noted that no physician had stated that the plaintiff's pain could not be controlled with conservative treatment modalities. (Id.) For the above reasons, the ALJ determined that the objective medical evidence in the record did not reflect the existence of an impairment that would produce the debilitating symptoms alleged

by the plaintiff, and reasonably concluded that the plaintiff was not disabled.[4] (Id.)

The fifth and final step--the determination of whether there was work available in the national economy befitting the plaintiff's limitations--only becomes relevant if the plaintiff has demonstrated an inability to perform her past relevant work. The ALJ, however, determined that the plaintiff retained sufficient residual functional capacity to perform her prior work as a dental assistant. Accordingly, there was no need for the ALJ consult a vocational expert in regard to the existence of feasible alternative employment. See Hawkins v. Barnhart, 356 F. Supp. 2d 359, 367 (S.D.N.Y. 2005).

---

[4] The plaintiff points out that the ALJ referred to Ninth Circuit law in his assessment of the credibility of the plaintiff's allegations of pain. (R. at 19.) This reference was harmless error. The analysis developed by the ALJ comports with the Commissioner's regulations and the Second Circuit standard. Compare R. at 19 with Marcus, 615 F.2d at 27, and Perez, 234 F. Supp. 2d at 340-41.

## CONCLUSION

There is substantial evidence on the record as a whole to support the Commissioner's determination that the plaintiff is not disabled under the Act, and is not entitled to disability insurance benefits. Therefore, the defendant's motion for judgment on the pleadings is **granted,** and the plaintiff's motion for judgment on the pleadings is **denied.** The Clerk is directed to enter judgment and to close this case.

**SO ORDERED.**

**Dated: New York, New York**
**October 19, 2005**

**John G. Koeltl**
**United States District Judge**